# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

WILLIAM EDWARD ROYSTER,     )
                                  )
             Plaintiff,    )
                                  )
v.                            )    Case No. 08-0141-CV-W-FJG
                                  )
TOMMY NICHOLS, et al.,       )
                                  )
             Defendants.  )

## <u>ORDER</u>

Currently pending before the Court is Kona Macadamia, Inc. ("Kona Grill") and George Rosenkoetter's Motion for Partial Summary Judgment (Doc. # 145); Highwoods Property, Inc.'s Renewed Motion for Summary Judgment (Doc. # 180); Board of Police Commissioner's ("Police Board") Motion for Summary Judgment (Doc. # 219); Chesley Brown International, Inc. ("Chesley Brown") and Tommy Nichols' Motion for Partial Summary Judgment (Doc. # 220); Tommy Nichols' Motion for Summary Judgment (Doc. # 222); Chesley Brown's Motion for Summary Judgment (Doc. # 224); Joint Motion to Strike Dr. Poppa's Opinions (Doc. # 181); Joint Motion to Strike Expert Designation, Testimony and Report of Michael Lyman (Doc. # 182); Plaintiff's Motion to Strike Defendant's Expert Roger Sommi (Doc. # 183); Plaintiff's Motion to Strike Defendant's Expert Stephen Peterson (Doc. # 184); Plaintiff's Motion for Leave to File Amended Suggestions in Opposition to the Motion to Strike Expert Report of Michael Lyman (Doc. # 192); Plaintiff's Motion for Leave to File Sur-Reply to Police Board's Reply in Support of Its Motion for Summary Judgment (Doc. # 235); Police Board's Motion in Limine (Doc. # 253); Plaintiff's Motion to File Sur-Reply in Response to

Chesley Brown's Reply in Support of its Motion for Summary Judgment (Doc. # 274); Plaintiff's Motion for Leave to file Sur-Reply in Response to Tommy Nichols' Reply in Support of His Motion for Summary Judgment (Doc. # 277); Plaintiff's Motion in Limine (Doc. # 303); Plaintiff's Amended Motion in Limine (Doc. # 304); Plaintiff's Motion for Leave to File Expert Affidavit Out of Time (Doc. # 305); Joint Motion in Limine to Exclude Evidence (Doc. # 308) and Chesley Brown and Officer Nichols' Motion in Limine (Doc. # 309).

## I. BACKGROUND

On February 28, 2006, William Royster went to the Kona Grill between 3:15-3:30 p.m. When he arrived, he handed an employee of the Kona Grill his credit card to open a tab. While at the restaurant, Royster and a friend ordered fifteen Gray Goose vodka drinks which totaled $156.00. George Rosenkoetter was the manager on duty at the Kona Grill on February 28, 2006. Around 8:00 p.m. Rosenkoetter asked Royster to leave because someone in Royster's group allegedly called a Kona Grill employee a "wetback." Royster left without his credit card and without signing the credit card receipt. Rosenkoetter called Plaza Security due to the delay in Royster's leaving the restaurant. Officer Tommy Nichols was sent by Plaza Security[1] in response to the call. Officer Nichols was a Kansas City, Missouri police officer who was working off-duty for Plaza Security. After walking a short distance, Royster returned to the Kona Grill after he realized that he did not have his credit card. At this point, Officer Nichols had arrived at the restaurant. Officer Nichols told plaintiff that he had not paid his bar bill. Plaintiff

_____

[1] Defendant Chesley Brown does business as Plaza Security.

told Officer Nichols and Rosenkoetter that he had left his credit card inside the restaurant. Rosenkoetter went into the restaurant, swiped the credit card and came outside. Officer Nichols handed the card and receipt to plaintiff and told him that he needed to sign it. Plaintiff told Officer Nichols that "I am not going to sign something I haven't seen." Officer Nichols claims that plaintiff also stated that "They kicked me out. I'm not paying the bill. Take me to jail." Officer Nichols told plaintiff "You need to sign the bill . . . or you are going to be arrested for theft of restaurant services." Officer Nichols then asked Rosenkoetter if he was willing to press charges if plaintiff did not sign the receipt. Rosenkoetter stated that he would and he then signed the General Ordinance Summons establishing the charges against plaintiff for stealing restaurant services. Officer Nichols then arrested plaintiff for refusing to sign the bill. Officer Nichols handcuffed plaintiff behind his back as per Kansas City Police Department policy, despite plaintiff's request that he be handcuffed in front due to an old shoulder injury. The charges against plaintiff for stealing restaurant services were later dismissed.

On July 2, 2009, plaintiff filed an eight count Second Amended Petition against Officer Nichols, Chief of Police, James Corwin, the Kansas City Board of Police Commissioners, Kona Grill, Highwoods Properties, Inc., Chesley Brown International, Inc. d/b/a Plaza Security and William Holbrook, Plaza Security Supervisor. Plaintiff alleges various claims in his petition including violation of his civil rights, various intentional torts and negligence. On August 26, 2010, pursuant to a Stipulation of Dismissal filed by the parties, the Court dismissed plaintiff's claims against Highwoods Properties, Inc. and on November 3, 2010, the Court granted plaintiff's Motion to voluntarily dismiss defendants James Corwin and William Holbrook.

## II. STANDARD

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If the moving party meets this requirement, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. 242, 248 (1986). In Matsushita Electric Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), the Court emphasized that the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts" in order to establish a genuine issue of fact sufficient to warrant trial. In reviewing a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. Matsushia, 475 U.S. 574, 588; Tyler v. Harper, 744 F.2d 653, 655 (8th Cir. 1984), cert. denied, 470 U.S. 1057 (1985).

## III. DISCUSSION

### A. Kona Grill and Rosenkoetter's Motion for Partial Summary Judgment

In Count I plaintiff alleges that Rosenkoetter intentionally and/or recklessly caused his wrongful arrest and imprisonment by acting in concert with Officer Nichols to falsely claim that plaintiff refused to pay for the alcoholic beverages. In Count II, plaintiff

claims that Rosenkoetter together with Officer Nichols, reached an understanding, acted

in concert and conspired to deprive plaintiff of his rights under the Constitution.  In

Count IV, plaintiff alleges that the Kona Grill did not have any policies or had inadequate

policies regarding training their employees in the techniques of investigating and

evaluating complaints regarding customers and in training employees as to their

obligation to truthfully report occurrences rather than to falsify information.

**1.  Section 1983 - Joint Action (Counts I and IV)**

> In order to recover under section 1983, a plaintiff must prove that the
> defendant deprived him of a constitutional right under color of state law.
> Adickes v. S.H. Kress & Co., 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26
> L.Ed.2d 142 (1970).  In a section 1983 action against a private party, a
> plaintiff will be entitled to relief if he can prove that the private party was 'a
> willful participant in joint activity with the State or its agents' which activity
> deprived the plaintiff of a constitutional right. Id. at 152, 90 S.Ct. at 1605-
> 1606.  For example, a store and its employees may be considered to be
> acting jointly with police when the police will detain accused shoplifters
> without making an independent investigation, Smith v. Brookshire Bros.,
> Inc., 519 F.2d 93, 94 (5th Cir. 1975)(per curiam), cert. denied, 424 U.S.
> 915, 96 S.Ct. 1115, 47 L.Ed.2d 320 (1976), or pursuant to a customary
> plan between the store and the police department, Duriso v. K-Mart No.
> 4195, Division of S.S. Kresge Co., 559 F.2d 1274, 1277 (5th Cir. 1977)(per
> curiam).

Murray v. Wal-Mart, Inc., 874 F.2d 555, 558-59 (8th Cir. 1989).

In Murray, the court found that numerous factors demonstrated that Wal-Mart

was acting in concert with the local police.  The plaintiff in that case was a black female

customer who while shopping was observed by a loss prevention employee taking a

bottle of cologne out of its box and placing the bottle inside her halter top.  As plaintiff

was leaving the store, the loss prevention employee, the store manager and an

assistant manger stopped plaintiff and asked about the cologne.  Plaintiff pulled her top

down to show that she was not concealing any merchandise.  Plaintiff  was then

escorted upstairs where the contents of her purse were emptied onto the floor. The Wal-Mart employees then phoned the police and based on the advice of a prosecutor, requested prosecution. Plaintiff was taken into custody and searched, but no items were found.

The Eighth Circuit noted that the store manager stated that it was Wal-Mart's practice to work with the police department in prosecuting shoplifters. The store security guard who stopped plaintiff was also a member of the police department and had a close relationship with the prosecuting attorney, who made the recommendation to prosecute based on the officer's word and not upon an independent investigation. The Eighth Circuit also noted that there was an Arkansas statute which provided that a merchant or his employee may detain a suspected shoplifter to recover unpurchased goods for a reasonable time and in a reasonable manner. The Court found that this statute, combined with "the concerted actions of Wal-Mart and the local police department, afford ample evidence of willful, joint activity which supports a claim against Wal-Mart under section 1983." Id. at 559.

Plaintiff argues that just as in Murray, he was detained and arrested for committing a crime he did not commit and Officer Nichols did not conduct an independent investigation into the incident, but instead relied on Rosenkoetter's assertions. Plaintiff also argues that Officer Nichols presented himself solely as a Kansas City, Missouri Police officer, thus making it more apparent that he was acting under color of law when he arrived at the scene and arrested plaintiff.

Defendants argue that this case is more similar to Youngblood v. Hy-Vee Food Stores, Inc., 266 F.3d 851 (8th Cir. 2001), cert. denied, 535 U.S. 1017, 122 S.Ct. 1606,

152 L.E.2d 621 (2002). In that case, a customer was initially observed while he was trying to select a can of beef jerky. Once he had selected a cannister of jerky, the customer proceeded up the aisle. A store employee thought the customer was acting suspiciously because it appeared he had his hands underneath his shirt. The customer then returned to the beef jerky section and placed the original cannister back on the shelf and selected another cannister. The customer then went to the front of the store and purchased a single cannister of jerky. The store employee checked the cannister that the customer had initially returned to the shelf and found it was missing several pieces of jerky. As the customer was walking toward the exit, the employee stopped the customer and asked for his receipt. The customer provided the receipt and the bag. When the employee opened the cannister, he found that it was stuffed full of beef jerky. Plaintiff was asked to go to an upstairs office with the Hy-Vee employees. Hy-Vee called the police department and reported a suspected shoplifting. When the police officer arrived and asked the employees what the customer had done, the manager stated that the customer had taken the contents of one cannister and placed it into another cannister. The customer was then arrested and taken to the police station. The criminal charges were eventually dismissed. The Eighth Circuit found that there was no Section 1983 claim, because there was no state action. The Court noted that the police officer who was called to the Hy-Vee investigated the incident by speaking with the store employee and examining the contents of the cannister. The Court also noted that merely invoking state legal procedures does not constitute state action.

In the instant case, Officer Nichols first spoke to Mr. Rosenkoetter to determine the nature of the problem. Officer Nichols also spoke with plaintiff about the situation

and about why he had not signed his credit card receipt. Officer Nichols explained to plaintiff that unless he signed the receipt, then Rosenkoetter was willing to press charges and that he would be taken to jail for theft of restaurant services. Officer Nichols stated that he felt he had made an adequate investigation of the circumstances and made numerous attempts to resolve the situation. (Nichols Deposition, p. 66). Officer Nichols did not simply take Rosenkoetter's word for the situation, but instead investigated the facts and spoke with both parties involved.  As the Court stated in Hanuman v. Groves, 41 Fed.Appx. 7 (8th Cir. 2002), "[a] store's conduct may be considered state action if the police rely on the store employees to perform police functions, for example, 'when the police detain accused shoplifters without making an independent investigation or pursuant to a customary plan between the store and the police department.'"  Id. at 8-9 citing Youngblood 266 F.3d at 855.  In this case, the Court does not find that Officer Nichols relied on Rosenkoetter to perform any police functions.  Additionally, plaintiff has not provided any evidence that there was any plan in place between the Officer Nichols and Mr. Rosenkoetter or the Kona Grill. Thus, the actions of the Kona Grill and Rosenkoetter in simply summoning Plaza Security cannot be considered state action for the purposes of Section 1983.

### 2.  Count II - Conspiracy

Rosenkoetter argues that the facts with regard to a conspiracy must be pled with specificity and a conclusory statement is insufficient. Rosenkoetter states that plaintiff has failed to set forth any facts which establish or even allude to a "meeting of the minds" between Rosenkoetter and Nichols sufficient to establish a conspiracy.  In his suggestions in opposition, plaintiff states in response that he need not prove that there

8

was a conspiracy between Kona Grill and Rosenkoetter and Officer Nichols in order to hold Kona Grill and Rosenkoetter liable under § 1983.  Other than this statement, plaintiff makes no other argument regarding the lack of specificity in his conspiracy allegation.  As stated in Deck v. Leftridge, 771 F.2d 1168 (8th Cir. 1985), "allegations of a conspiracy must be pleaded with sufficient specificity and factual support to suggest a 'meeting of the minds.'" Id. at 1170 (quoting Smith v. Bacon, 699 F.2d 434, 436 (8th Cir. 1983)). In the instant case, because plaintiff has provided nothing more than a conclusory statement regarding the alleged conspiracy the Court hereby **GRANTS** summary judgment on Count II of plaintiff's Amended Complaint.

Accordingly, because plaintiff has failed to show any joint action on the part of either the Kona Grill or George Rosenkoetter, and because plaintiff has also failed to show that there was any meeting of the minds between Rosenkoetter and Officer Nichols,  the Court hereby **GRANTS** defendant Rosenkoetter and the Kona Grill's Motion for partial summary judgment on Counts I, II and IV.

### B.  Chesley Brown's Motion for Summary Judgment

### 1. Section 1983 - Count IV

Chesley Brown argues that plaintiff's Section 1983 claim fails because Chesley Brown is not a state actor and was not operating under the color of state law.  Chesley Brown argues that plaintiff's Complaint contains only conclusory statements regarding potential constitutional violations attributable to Chesley Brown's policies and procedures.

Plaintiff argues in opposition that he is not required to have "intricately detailed

factual allegations" and states "nor need pleaders always set out their legal theories." Plaintiff states that the "[t]he Rules rely on discovery and summary judgment, rather than pleadings, to flesh out the disputed facts and cull unmeritorious cases." (Plaintiff's Suggestions in Opposition, pp. 19-20).

In Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Supreme Court stated, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555 (quoting Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)). Plaintiff in his Complaint alleges:

> Defendants Kona Grill, Highwoods Properties and Chesley Brown had in effect, both before and at the time of the events alleged in this petition, policies, practices, customs and procedures which operated to deprive Royster of his constitutional rights.

(Second Amended Petition ¶ 47).

> The unconstitutional policies, practices , customs and procedures of Kona Grill, Highwoods Properties and Chesley Brown include, but are not limited to the absence of or inadequate policies, practices, customs or procedures pertaining to:
> a. Training and supervision of employees and or their agents in the techniques of investigating and evaluating complaints regarding customers;
>
> b. Training and supervision of employees and or their agents as to their obligation to truthfully report occurrences rather than to falsify information to cover up misconduct;
>
> c. Covering up of misconduct by falsifying and fabricating evidence without regard to whether the policies, practices and customs might result in the unlawful prosecution or conviction of innocent persons; and
> d. Disciplining of employees who violate the constitution or law or otherwise transgress the rights of customers during employee investigation.

(Second Amended Petition ¶ 49). The Court finds that these types of allegations are

the very sort of vague, fomulaic recitation of elements which the court in <u>Twombly</u>

stated was inadequate.  However, because this is a motion for summary judgment and

not a motion to dismiss, the Court will consider the claims on their merits.

Plaintiff argues that Chesley Brown is liable under the doctrine of respondeat

superior.  In support of this position, plaintiff relies on an opinion from the Tennessee

Supreme Court.  In <u>White v. Revco Discount Drug Centers</u>, 33 S.W.3d 713 (Tenn.

2000), the Tennessee Supreme Court recognized that:

> most jurisdictions, if not all, resolve this type of issue by looking to the
> 'nature' of the act committed by the off-duty officer.  A majority of
> jurisdictions, including the Court of Appeals in this case, find that because
> the officer's actions giving rise to the tort were taken in the officer's official
> capacity, the private employer cannot be held vicariously liable.

<u>Id</u>. at 719.  However, the Tennessee Supreme Court found that the "nature of the act"

test did not comport with existing Tennessee law and instead relied on principles of

Tennessee agency law to resolve the issue.

Although interesting, the <u>White</u> case has no applicability to the facts of the instant

case because it is *Missouri* law which applies to this case. Under Missouri law, "where

the employee occupies a dual status, that is, as an employee and also as a police

officer, in the absence of a statute, where the employer does no more than relate the

material facts to the officer and leaves to him the decision as to what he should do as a

police officer, the employer is not liable for the acts of the police officer."  <u>Carmelo v.</u>

<u>Miller</u>, 569 S.W.2d 365, 367 (Mo. App. 1978). <u>See</u> <u>also</u> <u>Amadou v. Kansas City Police</u>

<u>Department</u>, No. 07-0378-CV-W-RED, 2007 WL 2873515 (W.D.Mo. Sept. 26,

2007)(same); <u>Martin v. Board of Police Commissioners of St. Louis City, Missouri</u>, No.

4:07-CV-1831 (JCH), 2008 WL 1732925 (E.D.Mo. Apr. 10, 2008)(Working for private

company as off-duty security "did not effect their status as police officers because they '[do] not lose their status as police officers,' when working secondary security.") Id. at *3 (quoting Carmelo, 569 S.W.2d 367). In this case, there is no dispute that Chesley Brown left to Officer Nichols's discretion how to handle the situation with plaintiff. Plaintiff did not controvert the following statements:

Chesley Brown did not tell Officer Nichols how to be a police officer. (Doc. # 225, ¶ 26; Doc. # 234, ¶ 26)

No employee of Chesley Brown who was not a police officer would possess supervisory authority over Officer Nichols in his effectuating the arrest of Plaintiff, and non-police officer employees of Chesley Brown let the police officers handle the investigation of incidents and stay out of the officers' way (Doc. # 225, ¶ 30; Doc. # 234, ¶ 30).

Therefore, the Court finds that Chesley Brown cannot be held vicariously liable for Officer Nichols' actions because Officer Nichols was functioning as a Kansas City Missouri Police officer at the time that he arrested plaintiff. Plaintiff also argues that Chesley Brown was a "state actor" acting under "color of law" and thus is liable under 42 U.S.C. § 1983. Plaintiff again cites to the Murray case as support for this proposition. However, as discussed earlier, because Officer Nichols conducted an independent investigation of the facts, neither Chesley Brown nor the Kona Grill can be considered state actors for the purposes of Section 1983.

Plaintiff also argues that Chesley Brown is liable for failing to direct Officer Nichols so that he would not have violated plaintiff's constitutional rights. However, as plaintiff admits in his Statement of Uncontroverted Material Facts:

> Even though KCPD Officer Nichols was in the course and scope of his employment with Chesley Brown, it [Chesley Brown] would have exercised no direction or control over Officer Nichols with regard to the arrest and incarceration of Mr. Royster and left that solely up to Officer Nichols and whatever policy and procedure Defendant KCPD might have. (Doc. # 234

¶ 76) and

Chesley Brown's Standard Operating Procedures would apply to its
security personnel, such as Sgt. Holbrook, but not to Officer Nichols.
(Doc. # 234, ¶ 79).

Thus, Chesley Brown had no direction or control over Officer Nichols, and thus it cannot be liable for failing to direct him. The cases cited by plaintiff are inapplicable as they relate to the liability of municipalities, local governments or government officials.

### 2. State Law Claims

Plaintiff states that Count V, the unlawful imprisonment count is no longer being pursued. However, plaintiff states that he is still continuing his pursuit of the malicious prosecution claim. Plaintiff states that an employer has vicarious liability for its employee's instigation of a malicious prosecution. However, as discussed above, Chesley Brown is not vicariously liable for the actions of Officer Nichols. Therefore, this claim must fail as to Chesley Brown. Plaintiff also argues that Chesley Brown is liable under Count VI - Negligence resulting in wrongful arrest and detention. However, as discussed above, because Chesley Brown had no control or authority to direct the actions of Officer Nichols, it cannot be liable for his alleged negligence in effecting the arrest of plaintiff. Therefore, Chesley Brown is also entitled to summary judgment on this Count.

Accordingly, for the reasons stated above, the Court hereby **GRANTS** Chesley Brown's Motion for Summary Judgment (Doc. # 224).

## C. Tommy Nichols' Motion for Summary Judgment

### 1. Count I - 42 U.S.C. § 1983 (Unlawful Arrest/Excessive Force)

**a. Unlawful Arrest - Probable Cause**

Plaintiff alleges in Count I that Officer Nichols arrested him without probable cause and used excessive force in effecting the arrest. Officer Nichols argues that because probable cause existed to arrest plaintiff for stealing, plaintiff has no claim for unlawful arrest. Additionally, even if probable cause did not exist, Officer Nichols argues that he was protected by the doctrine of qualified immunity. Plaintiff argues that probable cause did not exist in this case because Officer Nichols was aware that plaintiff's credit card had been charged for the drinks that he purchased, so he had not violated any laws. Plaintiff argues that Officer Nichols should not have disregarded this evidence when he conducted his investigation.

"[A] police officer may arrest without warrant one believed by the officer upon reasonable cause to have been guilty of a felony." United States v. Watson, 423 U.S. 411, 417, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976). A warrant is also not required "[i]f an officer has probable cause to believe that a individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." Atwater v. City of Lago Vista, 532 U.S. 318, 354, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001). "Whether the police had probable cause at the time of [plaintiff's] arrest is a question of law for a court to decide." Fisher v. Wal-Mart Stores, Inc., 619 F.3d 811, 816 (8th Cir. 2010). In Fisher, the Court stated,

> An officer has probable cause to make a warrantless arrest when the facts and circumstances are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense. . . . To determine the existence of probable cause, we look at the totality of the circumstances as set forth in the information available to the officers at the time of arrest. . . . As probable cause is determined at the moment the arrest was made, any later developed facts are irrelevant to the probable

14

cause analysis for an arrest. . . . [O]fficers are generally entitled to rely on the veracity of information supplied by the victim of a crime . . .

Id. at 816-817 (internal citations and quotations omitted).  In the Fisher case, the plaintiff had received four Wal-Mart money orders in the mail which she suspected might be fraudulent. Plaintiff took the money orders to her local Wal-Mart store and inquired if the money orders were real.  The employee alerted a Wal-Mart asset protection employee that the plaintiff was attempting to cash fake money orders.  The employee then called the police department.  A police officer was in Wal-Mart parking lot at the time when the call came in to the police dispatcher.  The officer in the parking lot stopped plaintiff and the other members of her family and asked for identification.  The second officer entered the store to talk with the employees.  The Officer who spoke with the employees had worked with them in the past and considered them to be reliable informants.  Believing that the plaintiff had attempted to commit a crime, plaintiff was arrested. Plaintiff argued on appeal that if the officer had properly investigated whether she had attempted to cash the fake money orders, she would not have been arrested. The Eighth Circuit rejected that argument, stating, "[o]fficers are not required to conduct a 'mini-trial' before arrest . . . ."  Id. at 817 (quoting Amrine v. Brooks, 522 F.3d 823, 832 (8ᵗʰ Cir. 2008)).  The Eighth Circuit stated that the pertinent question is: "whether, viewing the evidence in [plaintiff's] favor, the [Kansas City, Missouri] police (and specifically [Officer Nichols] . . .) had probable cause at the time of the arrest; that is, whether the facts and circumstances would have led to a reasonable conclusion that a crime had been committed."  Id. at 817.

The General Ordinance which plaintiff was charged with violating states:

**Sec. 50-106. Stealing.**

(b) A person commits the ordinance violation of stealing if he appropriates property or services of another with the purpose to deprive him thereof, either without his consent or by means of deceit.

(c) Evidence of the following is admissible in any criminal prosecution under this section on the issue of the requisite knowledge of belief of the alleged stealer:

(1) That he failed or refused to pay for property or services of a hotel, restaurant, inn or boardinghouse.

(2) That he left the hotel, restaurant, inn or boardinghouse with the intent not to pay for property or services.

(3) That he surreptitiously removed or attempted to remove his baggage from a hotel, inn or boardinghouse.

In the instant case, viewing the evidence in plaintiff's favor, Officer Nichols had probable cause to believe that a crime had been committed. When Plaza Security was initially contacted, the message Officer Nichols received was that there was a disturbance at the Kona Grill and a party was refusing to pay. Officer Nichols testified as follows:

Q. Did he [the plaintiff] ask you to arrest him?
A. I gave him multiple - - I mean many opportunities to resolve the matter. I explained to him that if he didn't feel it was solved to his justification, he could go file a small claims and follow up. And he said, "I'm not paying it, take me to jail."
Q. He said, "I'm not paying it, take me to jail?"
A. Yes, sir.
(Nichols Depo. p. 29, ll. 9-17).

Officer Nichols further testified:

Q. Okay. What disturbance was going on in addition?
A. When I was talking to Mr. Rosenkoetter, I ran through the situation. Mr. Royster came up, and that's when I talked to him and I explained the situation and I said, "What do you want to do?" He said, "I want him to pay the tab." And I said, "Okay. Will you prosecute if he refuses to pay the tab?" And he said, "Yes." And I said, "Will you sign a General Ordinance Summons?" And he said, "Yes." At that point, I get Mr. Royster, told him the situation, and he said he wasn't going to pay because he was kicked out of the bar. And I explained to him that if he felt he'd been wronged, that he needed to pay the bill, get the receipt, whatever, file a small claims in Jackson County if he wanted to follow up, but if he did not sign, – or take care of the bill, then he – the party would sign a GOS and he would go to jail for stealing restaurant services.

. . .

Q.  Okay.  But you remember him specifically stating that the reason he was not going to pay – Mr. Royster was not going to pay, quote, because he had been kicked out of the restaurant?

. . .

A.  He said that he'd been kicked out; he wasn't paying the bill.  And then I explained to him the procedure several times in his drunken state and he – I told him, I said, "Do you realize that if you don't take care of this, you're going to go to jail?"  And he said in a belligerent manner, "Then take me to jail."

(Nichols Deposition, pp. 88-89).


Mr. Rosenkoetter also testified:

Q.  All right.  So on multiple occasions he refused to pay his bill?
A.  On multiple occasions, yes.
Q.  And he affirmatively told you he was not going to pay his bill, true?
A.  True.
Q.  And he never signed the receipt that was presented to him, did he?
A.  He did not.
Q.  And as your understanding of the credit card procedures for the restaurant, without a signed receipt when someone is telling you they will not pay your bill, that means that they're not going to pay the bill, true?
A.  That means they have no intention to pay the bill, true.
Q.  And you have absolutely no resource whatsoever with American Express unless you have a signed credit card receipt from the customer, true?
. . .
A.  True.
. . .
A.  To my knowledge, it's not valid unless it's signed.
Q.  All right.  And all I want is your knowledge, all right?  Do you understand that?
A.  Yes.
Q.  At the time you said to Officer Nichols you were willing to press charges, that was your knowledge, true?
A.  Yes.
Q.  And you sincerely and honestly believed at that time that Mr. Royster had not paid his bill, was refusing to pay his bill and you were willing to press charges, true?
A.  That is true.

(Rosenkoetter Depo. pp. 116-117).

    Plaintiff does not dispute that he refused to sign the credit card bill.  In his

statement given on September 4, 2009, plaintiff admits that after he took back his credit

card, Officer Nichols told him that he had to sign the receipt. Plaintiff states that he told Officer Nichols that he doesn't just blindly sign something that he hadn't looked at. Plaintiff stated that he told Officer Nichols and Mr. Rosenkoetter, "'I'm not going to sign something that I haven't looked at.' I didn't know what they were, I wasn't going to sign it." When Officer Nichols once again asked plaintiff if he was going to sign the receipt, Plaintiff admits that he stated, "No, I'm not signing anything I haven't seen." (Royster Statement Sept. 14, 2009, pp. 9-10).

Viewing the facts in the light most favorable to the plaintiff, at the time that plaintiff was arrested, the facts and circumstances would have led to an objectively reasonable officer to conclude that plaintiff had stolen the alcoholic beverages from the Kona Grill, because he was refusing to pay for them. This is the information which was relayed to Officer Nichols by Mr. Rosenkoetter and this was subsequently confirmed by Officer Nichols' discussion with the plaintiff. It was Mr. Rosenkoetter's belief that the credit card charge slip was not valid unless plaintiff signed it. It is irrelevant for the probable cause analysis, that the bill was eventually paid by American Express. The fact is that both Mr. Rosenkoetter and Officer Nichols had a reasonable belief that the credit card charge slip was invalid unless it contained plaintiff's signature. In reviewing the totality of the circumstances, the Court finds that Officer Nichols had probable cause to arrest plaintiff on February 28, 2006.

**b. Qualified Immunity.**

In <u>Fisher</u>, the Court stated if there is actual probable cause, then it is not

18

necessary to determine whether qualified immunity protects the officers.  Id. at 818

citing, Foster v. Metro Airports Comm'n, 914 F.2d 1076, 1079 (8th Cir.1990).  See also

Peterson v. City of Plymouth, 60 F.3d 469,473 (8th Cir. 1995)("If the officers had

probable cause, the arrests did not violate the Fourth Amendment and the officers are

not liable.").  Therefore, because the Court finds that Officer Nichols had probable

cause to arrest plaintiff, it is not necessary to discuss whether he was also protected by

the doctrine of qualified immunity.

### c. Excessive Force

All claims that law enforcement officers have used excessive force, whether deadly or not, in the course of an arrest, investigatory stop, or other seizure are analyzed under the Fourth Amendment's objective reasonableness standard. . . . Not every push or shove violates the Fourth Amendment, but force is excessive when the officers' actions are not objectively reasonable in light of the facts and circumstances confronting them. . . . The inquiry, then, is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. . . . Objective reasonableness depends on the facts and circumstances of the case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. . .  A court may also evaluate the extent of the suspects' injuries . . . Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts.

Green v. Missouri, No. 4:06CV1667RWS, 2010 WL 3270126, * 16 (E.D.Mo. Aug. 17,

2010)(internal citations and quotations omitted).  The Court in Green also noted:

The Eighth Circuit has stated that 'a de minimis use of force or injury is insufficient to support a finding of a constitutional violation.  Crumley v. City of St. Paul, 324 F.3d 1003, 1007 (8th Cir. 2003).  The Supreme Court's decision this year in Wilkins [v. Gaddy, 130 S.Ct. 1175, 1179 (2010)] clarified that, at least in the context of Eighth Amendment excessive force claims, the "core judicial inquiry" has shifted "from the extent of the injury to the nature of the force."  Wilkins, 130 S.Ct. at 1179.

Id. at *16.

> The "reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham [v. Connor, 490 U.S. 386, 394 (1989)]. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Id.

Luepker v. Taylor, No. 4:09CV1657-DJS, 2010 WL 2696701,*8 (E.D.Mo. July 6, 2010).

In the instant case, plaintiff complains that he should not have been handcuffed at all because he was only charged with a minor crime and secondly, that Officer Nichols improperly handcuffed him with his arms behind his back, which aggravated an old shoulder injury. Plaintiff states that he told Officer Nichols that he had a shoulder injury and requested that he be handcuffed in the front. However, plaintiff states that Officer Nichols ignored his request and instead handcuffed him in the back. Plaintiff states that his physician Dr. Poppa will testify that this cuffing behind his back led to plaintiff's need for rotator cuff surgery. In his deposition Dr. Poppa testified as follows:

Q. Sir, I appreciate that. My question was: Are you aware of any medical record where Mr. Royster sought medical treatment for his right shoulder in 2006?
A. No.
Q. Any medical record where Mr. Royster sought medical treatment for his shoulder in 2007?
A. No. He did not go for any medical attention at that time.
Q. Any medical record where Mr. Royster sought medical treatment for his right shoulder in 2008?
A. No.
Q. Any medical record whatsoever where Mr. Royster sought medical treatment for his right shoulder prior to March of 2009?
A. No.
Q. The first time that you are aware of Mr. Royster making any complaints to any of his health care providers about any problems with his right shoulder that he believed were attributable to the February 2006 incident were in March of 2009; correct?
A. Correct.
Q. You would agree with me that that would be some three years after the incident

occurred; true?

A. True.

(Dr. Poppa's Deposition, pp. 17-18).

"The Supreme Court has long recognized that the right to make an arrest carries with it the right to use some degree of physical coercion or threat thereof to effect it." Luepker, 2010 WL 2696701 at *7, (citing Graham, 490 U.S. at 396). In the instant case, the only force that plaintiff alleges was excessive was the placement of his hands behind his back when he was arrested. Plaintiff argues that there was no need to handcuff him because he was only charged with a minor crime, he was not acting in an aggressive manner or resisting arrest. However, Officer Nichols testified that he smelled alcohol on plaintiff's breath, and that it was Kansas City, Missouri Police Department policy to handcuff individuals behind their backs. Considering all of the facts and circumstances, the Court finds that it was reasonable for Officer Nichols to handcuff plaintiff with his hand behind his back after arresting him. The Court thus finds that the minimal amount of force used was reasonable and necessary under the circumstances. In addition to analyzing the circumstances surrounding the arrest, a court may also consider the results of the force. In this case, the Court finds that plaintiff's injuries were de minimis. Plaintiff's medical expert testified that plaintiff did not seek any medical attention for his shoulder until March 2009, over three years after he was arrested. In Wertish v. Krueger, 433 F.3d 1062, 1067 (8th Cir. 2006), the Court stated, "because some force was reasonably required to arrest and handcuff Wertish, his relatively minor scrapes and bruises and the less-than-permanent aggravation of a prior shoulder condition were *de minimis* injuries that support the conclusion that [the officer] did not use excessive force."

In Crumley v. City of St. Paul, Minnesota, 324 F.3d 1003 (8th Cir. 2003), the Court found that there must be something beyond allegations of minor injuries in order to show that the application of handcuffs amounted to excessive force. In that case because plaintiff failed to present any medical records showing that she suffered any long term or permanent physical injury from handcuffs being too tightly secured, the Court found that summary judgment was proper. Similarly, in the instant case, where the plaintiff's only claimed injury from the handcuffing was the aggravation of a pre-existing shoulder injury, that he waited three years to seek medical attention for, supports the conclusion that Officer Nichols' actions were reasonable and that he did not use excessive force in effecting the arrest.

Accordingly, the Court hereby **GRANTS** Officer Nichols' Motion for Summary Judgment on Count I.

### 2. Count II - 42 U.S.C. § 1983 (Conspiracy)

Plaintiff alleges in Count II that Officer Nichols together with defendants Rosenkoetter and Holbrook acting under color of law, reached an understanding, acted in concert and engaged in a course of conduct together and conspired among and between themselves to deprive him of his constitutional rights.

Officer Nichols argues that the allegations in Count II stem from the same set of facts and occurrences as alleged in Count I and he argues that he is protected by qualified immunity for the conspiracy charge as well. Officer Nichols also argues that plaintiff can present no evidence supporting the elements of a prima facie claim of conspiracy. Plaintiff failed to respond at all to Officer Nichols' arguments regarding

Count II.

>A party may not recover on a § 1983 claim of conspiracy for deprivation
>of civil rights unless the party establishes a right to recover on the
>underlying civil rights action. <u>West v. Carson</u>, 49 F.3d 433, 436 (8th Cir.
>1995). A determination that defendants did not deprive plaintiffs of their
>civil rights precludes recovery for conspiracy to deprive plaintiffs of those
>same rights. <u>Id</u>. Because the undisputed evidence before the Court shows
>defendants' conduct not to have violated plaintiffs' constitutional rights as
>alleged, plaintiffs' § 1983 claim of conspiracy to deprive them of such rights
>must fail. <u>Id</u>.; <u>Ivester v. Lee</u>, 991 F.Supp. 1113,1124 (E.D.Mo.1998).

<u>Conway v. Battelle</u>, No.4:04CV569FRB, 2006 WL 897142, *21 (E.D.Mo. Mar. 30, 2006).

As the Court has determined that Officer Nichols did not violate plaintiff's

constitutional rights, plaintiff's Conspiracy claim must necessarily fail. Accordingly,

Officer Nichols' Motion for Summary Judgment on Count II is hereby **GRANTED**.

### 3. State Law Claims - Counts V, VI and VII

#### a. Official Immunity

Officer Nichols argues that plaintiff's state law claims cannot succeed because he

is protected by the doctrine of official immunity. "Under Missouri law, the doctrine of

official immunity protects public officials from civil liability for injuries arising out of their

discretionary acts or omissions performed in the exercise of their official duties." <u>McLean
v. Gordon</u>, 548 F.3d 613, 617 (8th Cir. 2008), <u>cert. denied</u>, 129 S.Ct. 2444, 174 L.Ed.2d

228 (2009), (quoting <u>James ex rel. James v. Friend</u>, 458 F.3d 726, 731 (8th Cir.2006)).

"Official immunity does not, however, shield officials for liability arising from their

negligent performance of ministerial acts or functions." <u>Id</u>. "Discretionary acts require

'the exercise of reason in the adaption of means to an end and discretion in determining

how or whether an act should be done or pursued.'" <u>Terbrock v. Berry</u>, No. 2:09CV0013

JCH, 2010 WL 3075712, *8 (E.D.Mo. Aug. 3, 2010), (quoting <u>Rustici v. Weidemeyer</u>, 673 S.W.2d 762, 769 (Mo.1984)).  "A ministerial act is one 'of a clerical nature which a public official is required to perform upon a given state of facts, in a prescribed manner, in obedience to the mandate of legal authority, without regard to his own judgment or opinion concerning the propriety of the act to be performed.'" <u>Id</u>.  "Official immunity does not apply, however, to discretionary acts done in bad faith or with malice. . . . 'The relevant definition of bad faith or malice in this context ordinarily contains a requirement of actual intent to cause injury.'" <u>Miller v. Albright</u>, No. 4:07-CV-1086CAS, 2009 WL 4573295, *7 (E.D.Mo. Dec. 3, 2009), (quoting

<u>State ex rel. Twiehaus v. Adolf</u>, 706 S.W.2d 443, 446 (Mo.1986)(en banc)).

Decisions to make an arrest and how that should be accomplished, have been found to be discretionary acts.  In <u>Terbrock</u>, the Court found that the officer's decision to arrest the plaintiff was "discretionary as a matter of law. 'Deciding whether or not to arrest someone is a matter of discretion-the officer must decide what course should be pursued based on the circumstances at hand.'" <u>Id</u>. at *9 (quoting <u>Richardson v. Bd. of Police Comm'rs of Kansas City</u>, No. 04-351, 2006 WL 51187 (W.D.Mo. Jan. 10, 2006)). <u>See</u> <u>also</u> <u>Wagner v. City of Pine Lawn, Missouri</u>, No. 4:05-CV-1901JCH, 2008 WL 350988, *6 (E.D.Mo. Feb. 7, 2008).

Plaintiff argues that the official immunity doctrine does not apply because Officer Nichols was working for and being paid by Chesley Brown. Plaintiff argues that Officer Nichols' "legal exposure in conducting that arrest and Royster's detention was no different than would be true of any other citizen making an arrest in the course and scope of their employment with a private entity."  (Plaintiff's Suggestions in Opposition, p.

24

26).  Plaintiff also argues that the official immunity does not protect Officer Nichols in his capacity as a police officer because he wrongfully arrested plaintiff for a theft that had not occurred.  Plaintiff argues that Nichols could have learned that the credit card had been charged if he had either asked Rosenkoetter or plaintiff.  Plaintiff argues that Officer Nichols' conduct, "however characterized, whether it be said to involve bad faith, actual malice, willful disregard or intentional wrongdoing makes the defense of official immunity or the public duty doctrine a factual issue."

The Court finds that the official immunity doctrine protects Officer Nichols from liability for plaintiff's state law claims.  As discussed earlier, there is no question that Officer Nichols when he effected the arrest of plaintiff was acting as a Kansas City, Missouri police officer and not as a private employee of Chesley Brown. Therefore, because he was a "public official" the official immunity doctrine applies to his actions. The caselaw is also clear that effecting an arrest is a discretionary decision. Thus, Officer Nichols' actions in questioning Rosenkoetter and plaintiff and then deciding that plaintiff had violated the General Ordinance Sec. 50-106 because he refused to sign the credit card receipt and then arresting and handcuffing plaintiff were all discretionary actions which are protected.  Plaintiff argues that there is a factual issue regarding whether Officer Nichols' actions were done in bad faith or with malice.  However, the Court finds that plaintiff has provided no evidence that there was any sort of malice or bad faith on the part of Officer Nichols.  "A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another.  An act is wanton when it is done of wicked purpose, or when done needlessly, manifesting a reckless indifference to

25

the rights of others." State ex rel. Twiehaus, 706 S.W.2d at 447. In this case plaintiff has failed to offer any evidence that Officer Nichols intended to harm or injury plaintiff when he arrested him. Therefore, the Court finds that the official immunity doctrine applies and therefore **GRANTS** Officer Nichols' Motion for Summary Judgement on plaintiff's state law claims of false arrest and unlawful imprisonment, negligence resulting in the wrongful arrest and detention and malicious prosecution.

For the reasons stated above, the Court hereby **GRANTS** Officer Nichols' Motion for Summary Judgment (Doc. # 222).

### D. Board of Police Commissioner's Motion for Summary Judgment

Plaintiff argues that the Board of Police Commissioner's violated his constitutional rights by failing to train officers in the techniques of conducting criminal investigations and by failing to train officers to truthfully report occurrences. The Board of Police Commissioner's argues that it is entitled to summary judgment because plaintiff is alleging only one isolated incident. Assuming that plaintiff's allegations were true, the Board argues that this one time incident did not put the Board on notice of a pattern of misconduct, or indicate the need for additional training. The Board argues that there is no notice that the handcuffing of plaintiff with his hands behind his back or the failure to investigate was either a policy or a training issue. The Board also argues that there is no evidence that Officer Nichols falsified information in the General Ordinance Summons.

Plaintiff argues that in this case there is no established procedure or training directing the conduct of Kansas City, Missouri police officers who are working off-duty for private security companies. Plaintiff states that because these officers have an interest

26

in satisfying their private employers, and because there is no expectation from the police department that they obtain anything other than a complaint from the merchant and because the off-duty officers are discouraged from seeking input from the police department regarding the off-duty arrests, it is "obvious that the arrest and improper cuffing of persons, such as Mr. Royster, would occur without probable cause and with undue force and did occur in this case." (Plaintiff's Suggestions in Opposition, p. 17).

In Conway, 2006 WL 897142, plaintiff alleged that the Police Superintendent and the Board of Police Commissioners had failed to properly select and train police officers as to appropriate responses to crises involving mentally handicapped individuals, and that this failure caused the officers to be unfit to deal with the crisis which resulted in an unconstitutional assault and ultimately the death of plaintiff's son. The Court stated:

> In the Eighth Circuit, a party is unable to prevail on such theories [failure to train or supervise] unless an underlying violation of the Constitution is established. Schulz [v.Long, 44 F.3d 643, 650 (8th Cir. 1995)]; see also Brodnicki v. City of Omaha, 75 F.3d 1261,1266 (8th Cir.1996)(claims against the city for inadequate training or municipal custom lack merit where police officers did not violate plaintiffs' constitutional rights). Given the Court's disposition of plaintiffs' constitutional claims, and specifically, that no Fourth Amendment violation occurred in the manner and method of entry to the Conway residence or to [decedent's] bedroom, and that no Fourth Amendment violation occurred in the use of force upon [decedent], there exists no constitutional injury upon which the plaintiffs may premise their claim of failure to train. Schulz, 44 F.3d at 650. Consequently, Superintendent Battelle and the Board of Police Commissioners cannot be liable to plaintiffs under § 1983 and are thus entitled to judgment as a matter of law on Counts VII and VIII of plaintiffs' Complaint. Id.; see also Neal v. St. Louis County, 52 F.Supp.2d 1090, 1096 (E.D.Mo. 1999), aff'd, 217 F.3d 955 (8th Cir.2000).

Id. at * 22. See also Saunders v. City of Minneapolis, Minnesota, 474 F.3d 523, 527 (8th Cir. 2007)("Without a constitutional violation by the individual officers, there can be no §1983 or Monell [v. New York City Dep't. of Soc. Servs., 436 U.S. 658, 98 S.Ct. 2018, 56

L.Ed.2d 611 (1978)] failure to train municipal liability.").  Therefore, because the Court

has determined that Officer Nichols did not violate plaintiff's constitutional rights, the

Kansas City, Missouri Board of Police Commissioners cannot be liable under 42 U.S.C.

§ 1983.  Accordingly, the Court hereby **GRANTS** the Board's Motion for Summary

Judgment (Doc. # 219).

### E. Nichols and Chesley Brown's Motion for Summary Judgment (On Lost Profits Claim)

Officer Nichols and Chesley Brown move for partial summary judgment regarding

the fact that plaintiff cannot come forward with any evidence substantiating his claim for

alleged future lost profits of NorthStar.  In light of the Court's rulings on the other

summary judgment motions and the fact that no claims remain, the Court finds it

unnecessary to rule on this motion regarding lost profits.  Accordingly, Nichols and

Chesley Brown's Motion for Summary Judgment on the Lost Profits Claim is hereby

**DENIED** as **MOOT** (Doc. # 221).

### IV.  CONCLUSION

For the reasons stated above, the court hereby:

**GRANTS** Kona Macadamia, Inc. ("Kona Grill") and George Rosenkoetter's Motion

for Partial Summary Judgment (Doc. # 145); **DENIES AS MOOT** Highwoods Property

Inc.'s Renewed Motion for Summary Judgment (Doc. # 180); **GRANTS** Board of Police

Commissioner's ("Police Board") Motion for Summary Judgment (Doc. # 219); **DENIES**

**AS MOOT** Chesley Brown International, Inc.("Chesley Brown") and Tommy Nichols'

Motion for Partial Summary Judgment (Doc. # 220); **GRANTS** Tommy Nichols' Motion

for Summary Judgment (Doc. # 222); **GRANTS** Chesley Brown's Motion for Summary

Judgment (Doc. # 224); **DENIES AS MOOT** the Joint Motion to Strike Dr. Poppa's Opinions (Doc. # 181); **DENIES AS MOOT** the Joint Motion to Strike Expert Designation, Testimony and Report of Michael Lyman (Doc. # 182); **DENIES AS MOOT** Plaintiff's Motion to Strike Defendant's Expert Roger Sommi (Doc. # 183); **DENIES AS MOOT** Plaintiff's Motion to Strike Defendant's Expert Stephen Peterson (Doc. # 184); **DENIES AS MOOT** Plaintiff's Motion for Leave to File Amended Suggestions in Opposition to the Motion to Strike Expert Report of Michael Lyman (Doc. # 192); **GRANTS** Plaintiff's Motion for Leave to File Sur-Reply to Police Board's Reply in Support of Its Motion for Summary Judgment (Doc. # 235); **DENIES AS MOOT** Police Board's Motion in Limine (Doc. # 253); **DENIES** Plaintiff's Motion to File Sur-Reply in Response to Chesley Brown's Reply in Support of its Motion for Summary Judgment (Doc. # 274); **DENIES** Plaintiff's Motion for Leave to file Sur-Reply in Response to Tommy Nichols' Reply in Support of His Motion for Summary Judgment (Doc. # 277); **DENIES AS MOOT** Plaintiff's Motion in Limine (Doc. # 303); **DENIES AS MOOT** Plaintiff's Amended Motion in Limine (Doc. # 304); **DENIES AS MOOT** Plaintiff's Motion for Leave to File Expert Affidavit Out of Time (Doc. # 305); **DENIES AS MOOT** the Joint Motion in Limine to Exclude Evidence (Doc. # 308) and **DENIES AS MOOT** Chesley Brown and Officer Nichols' Motion in Limine (Doc. # 309).

Date:   12/06/10          **S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri              Fernando J. Gaitan, Jr.
                                   Chief United States District Judge